1
2

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

3
4

HIPOLITO MERCADO-GONZÁLEZ,

Plaintiff,                                    Civil No. 12-1718 (JAF)

v.

EMILIO ACOSTA, a Puerto Rico Police
officer, et. al.,

Defendants.

5
6

**OPINION AND ORDER**

7      We must decide whether a police officer and a municipal official violated the

8   Constitutional rights of a citizen.

9                                        **I.**

10
11                                  **Background**

12      On September 9, 2011, Hipólito Mercado-González was in Yauco, Puerto Rico,

13   fundraising for the civic and social organization Asociación Puertorriqueña de Ayuda al

14   Paciente. (Docket No. 20 at 3).  Mercado-González maintains that, while he was resting

15   in the driver's seat of a parked vehicle, Officer Emilio Acosta pulled up in a cruiser and

16   asked Mercado-González where he was from and what he was doing. (Id. at 4.)  When

17   he said he was fundraising, Acosta asked to see his permit.  Mercado-González told

18   Acosta that he was without a permit and was unaware that one was needed. (Id. at 4-5.)

19   Acosta then requested Mercado-González's driver's license and the vehicle's registration

20   papers, which Mercado-González attempted to provide only after the second request. (Id.

21   at 5.)  Mercado-González conceded that his driver's license had expired but said his

1   brother, who was seated in the passenger seat of the vehicle, was driving and did have a

2   valid license. (Id. at 5-6.)  Mercado-González could not produce the registration papers

3   but volunteered that, since the vehicle was rented, Acosta could contact the rental agency.

4   Acosta then asked Mercado-González to exit the vehicle—informing him that he was

5   under arrest. Mercado-González claims that Acosta arrested him in an extremely rough

6   manner, restraining him with two sets of handcuffs.  (Id. at 7.)  Acosta asked for the keys

7   to the rental vehicle and informed Mercado-González that the vehicle would be taken to

8   the police station.  At the police station, Mercado-González received a written document

9   detailing his Constitutional rights. The city cited him for obstruction of justice and

10  driving with an expired license. He received three administrative tickets: (1) causing

11  unnecessary noise; (2) failing to produce a car's registration documents; and (3) driving

12  without a valid driver's license. He received a citation to appear in court on October 11,

13  2011.  (Id. at 10.)

14          On September 13, 2011, Mercado-González visited Mayor Abel Nazario's office

15  to deliver a letter expressing his concern about his arrest and to request a municipal

16  investigation into Acosta's handling of the matter. (Id.)  On October 11, 2011, Mercado-

17  González attended his court hearing. Acosta did not appear. On November 11, 2011,

18  Mercado-González attended an administrative hearing where his three tickets were

19  upheld, with a total fine of $714.64.  Mercado-González did not appeal these tickets. (Id.

20  at 11.)

21          On June 23, 2012, Mercado-González filed a pro-se complaint against Acosta and

22  Nazario in their official and individual capacities, their conjugal partnerships, as well as

23  the Municipality of Yauco.  He claimed the defendants violated his Fourth Amendment

24  and Fourteenth Amendment rights and a right to damages for those violations under 42

Civil No. 12-1718 (JAF)                                                        -3-

1    U.S.C. § 1983.  (Docket No. 2.) The contested constitutional claims allege that (1) Acosta

2    used excessive force and unlawfully arrested Mercado-González in violation of his

3    Fourth Amendment rights, and that (2) Nazario failed to prevent Acosta's actions,

4    depriving Mercado-González of due process and equal protection of law. (Id.) The

5    complaint also contains Commonwealth law claims asserted against both Acosta and

6    Nazario. (Id.) On January 18, 2013, defendants moved to dismiss. (Docket

7    No. 12.) Mercado-González filed an amended complaint on April 22, 2013 (Docket

8    No. 20), and defendants filed a motion to dismiss anew on May 6, 2013 (Docket No. 21).

9                                               **II.**
10
11                                   **Standard of Review**

12   **A.     Motion to Dismiss Standard**

13        A plaintiff's complaint will survive a motion to dismiss if it alleges sufficient facts

14   to establish a plausible claim for relief.  See Fed.R.Civ.P. 12(b)(6); Ashcroft v. Iqbal, 556

15   U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In

16   assessing a claim's plausibility, the court must construe the complaint in the plaintiff's

17   favor, accept all non-conclusory allegations as true, and draw any reasonable inferences

18   in favor of plaintiff.  San Geronimo Caribe Project, Inc. v. Acevedo-Vila, 687 F.3d 465,

19   471 (1st Cir. 2012) (citation omitted).

20                                              **III.**
21
22                                        **Discussion**

23        Because Petitioner appears pro se, we construe his pleadings more favorably than

24   we would those drafted by an attorney.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

25   Nevertheless, Petitioner's pro-se status does not excuse him from complying with

26   procedural and substantive law.  Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

Civil No. 12-1718 (JAF)                                                      -4-

1   **A.      Claims Raised Under 42 U.S.C. § 1983**

2        Section 1983 creates a cause of action against those who, acting under color of

3   state law, violate a plaintiff's federal rights. See 42 U.S.C. § 1983; Maine v. Thiboutot,

4   448 U.S. 1, 4(1980).

5   **B.      Illegal Arrest and Excessive Force Claim Against Officer Acosta**

6        Construing Mercado-González's complaint liberally and taking his allegations as

7   true, as we must, his allegations appear to state a claim for relief under 28 U.S.C. § 1983

8   for excessive force and illegal arrest in violation of the Fourth Amendment.

9        "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment

10  where there is probable cause to believe that a criminal offense has been or is being

11  committed," Devenpeck v. Alford, 543 U.S. 146, 152 (2004).   Probable cause exists

12  when the police know reasonably trustworthy information sufficient to warrant a prudent

13  person in believing that the accused had committed or was committing an offense.

14  United States v. Burhoe, 409 F.3d 5, 10 (1st Cir. 2005); see also Beck v. Ohio, 379 U.S.

15  89, 91 (1964).   Accordingly, for a wrongful arrest claim to succeed under § 1983, a

16  plaintiff must prove that the police lacked probable cause." Correia v. Feeney, 620 F.3d

17  9, 12 (1st Cir. 2010).

18       Here, Acosta approached the automobile that Mercado-González was sitting in

19  and asked for verification that he had a municipal permit to fundraise.   Mercado-

20  González conceded he did not have the permit.  Acosta then requested his driver's license

21  and proof of his vehicle's registration.   Even though Mercado-González was in the

22  driver's seat when Acosta approached, he told Acosta that he had no license and could

23  not find the vehicle's registration papers—first, because he said the vehicle was his

24  brother's and he did not know where the papers were, and later because he said the car

Civil No. 12-1718 (JAF)                                                                -5-

1    was a rental.  It was after this exchange that Acosta placed Mercado-González under

2    arrest, impounding the vehicle.  Even according to the way Mercado-González tells the

3    story, Acosta had probable cause to arrest him: Mercado-González was behind the wheel

4    of a vehicle without a driver's license or registration; he gave conflicting accounts of his

5    situation; and he lacked a municipal fundraising permit, which was required for the

6    activity in which Mercado-González was engaging.

7            Mercado-González's complaint also alleges that Acosta used "excessive and

8    unnecessary force."  (Docket No. 20 at 7.)  "[A]ll claims that law enforcement officers

9    have used excessive force ... in the course of an arrest, investigatory stop, or other seizure

10   of a free citizen should be analyzed under the Fourth Amendment and its reasonableness

11   standard ...."  Graham v. Connor, 490 U.S. 386, 395 (1989).  However, Mercado-

12   González merely asserts this claim—without alleging any factual support.  A complaint

13   must contain "sufficient factual matter, accepted as true, to state a claim to relief that is

14   plausible on its face."  Ashcroft v. Iqbal, 556 at 678.  Not "every push or shove" will

15   reach the level required for actionable excessive force claim under Fourth Amendment.

16   Mlodzinski v. Lewis, 648 F.3d 24, 38 (1st Cir. 2011) (citation omitted).  Mercado-

17   González's  excessive-force  allegations  are,  therefore,  insufficient  to  withstand

18   Defendants' Rule 12(b)(6) motion because, without more, they do not constitute a clear

19   violation of Mercado-González's constitutional rights.

20           Finally, Mercado-González asserts that his vehicle was "illegally confiscated."

21   (Docket No. 20 at 7.)   "Courts, including this one, have frequently held that

22   impoundments of vehicles for community caretaking purposes are consonant with the

23   Fourth Amendment so long as the impoundment decision was reasonable under the

24   circumstances."  United States v. Coccia, 446 F.3d 233, 239 (1st Cir. 2006); see also,

Civil No. 12-1718 (JAF)                                                                    -6-

1    United States v. Rodriguez–Morales, 929 F.2d 780, 786 (1st Cir.1991).  Here,

2    impoundment was reasonable under the circumstances because Acosta was taking

3    Mercado-González into custody for an offense and the registration and ownership of the

4    vehicle could not be ascertained at the time of the arrest.  (Docket No. 20 at 6.)  That

5    arrest, at least as Mercado-González alleges it, did not violate the Constitution, and

6    neither did impounding his vehicle.  Nor did Acosta's search of the vehicle at the police

7    station violate Mercado-González's Fourth Amendment rights.  United States v.

8    Richardson, 514 F.3d 74, 85 (1st Cir. 2008) (Fourth Amendment permits a warrantless

9    inventory search if the search is carried out pursuant to a standardized policy.)

10        Therefore, Mercado-González's complaint against Acosta and his conjugal

11   partnership is **DISMISSED WITH PREJUDICE**.

12   **C.      Claims Against Mayor Nazario**

13        Nazario is correct that Section 1983 does not impose liability on the basis of

14   respondeat superior.  Rizzo v. Goode, 423 U.S. 362, 375-77 (1976); Leavitt v. Corr. Med.

15   Servs., Inc., 645 F.3d 484, 502 (1st Cir. 2011) (supervisory officials cannot be held liable

16   for the conduct of their subordinates solely under a theory of respondeat superior); see

17   also Martinez-Velez v. Rey-Hernandez, 506 F.3d 32, 41 (1st Cir. 2007) ("Only persons

18   who were directly involved in the wrongdoing may be held liable.") (citation omitted).

19   Under Section 1983, supervisory liability is limited to those circumstances where a

20   supervisor's conduct constitutes "encouragement, condonation or acquiescence or gross

21   negligence … amounting to deliberate indifference."  Grajales v. Puerto Rico Ports

22   Authority, 682 F.3d 40, 47 (1st Cir. 2012) (citation omitted).  The parties agree that

23   Nazario's involvement in this matter was limited to his official role as mayor and chief of

24   the Yauco municipal police.  (Docket No. 20 at 10; 21 at 7.)  All Mercado-González

Civil No. 12-1718 (JAF)                                                    -7-

1   alleges is that he visited Nazario's office to complain about his arrest and request an

2   investigation into Officer Acosta's conduct.   As such, Mercado-González's claims

3   against Nazario fail to state a claim of supervisory liability under Section 1983.

4   Mercado-González's complaint against Nazario and his conjugal partnership is

5   **DISMISSED WITH PREJUDICE.**

6   **D.    Fourteenth Amendment Claims**

7       Mercado-González's allegations appear to suggest a claim for malicious

8   prosecution.   Malicious prosecution under § 1983 requires a constitutional deprivation

9   and no adequate state remedy.   Torres v. Superintendent of Police of Puerto Rico, 893

10  F.2d 404, 410 (1st Cir. 1990).   Here, Mercado-González has failed to state a claim for a

11  constitutional violation and, in any event, Commonwealth law provides remedies for

12  challenging police action in court.   See, e.g., Ayala v. San Juan Racing Corp., 112 D.P.R.

13  804 (May 14, 1982).   Mercado-González's malicious prosecution claim is **DISMISSED**

14  **WITH PREJUDICE**.

15      Mercado-González also alleges that Acosta and Nazario violated the equal

16  protection clause of the Fourteenth Amendment.   To prove a violation of the equal

17  protection clause, Mercado-González must show that (1) compared with others similarly

18  situated, he was selectively treated; and (2) that such selective treatment was based on

19  impermissible considerations such as race, sex, or religion.   Freeman v. Town of Hudson,

20  714 F.3d 29, 38 (1st Cir. 2013).   Mercado-González, however, makes no allegations that

21  he was selectively treated nor does he allege that Acosta and Nazario acted because of

22  racial or class-based animus.   As a result, Mercado-González's equal protection claim is

23  **DISMISSED WITH PREJUDICE**.

Civil No. 12-1718 (JAF)                                                                    -8-

1    **E.      Claims Against the Municipality of Yauco**

2          Mercado-González alleges that the Municipality of Yauco failed to properly

3    select, train, investigate, and discipline its police force. Under Monell, a municipality is

4    liable only for identifiable constitutional violations attributable to official municipal

5    policy.  Monell v. Department of Social Services of City of New York, 436 U.S. 658, 691

6    (1978).   But the municipality's failure to train or supervise its police officers only

7    becomes a basis for liability when municipal policy "*caused a constitutional tort.*"

8    Monell, 436 U.S. at 691 (emphasis added); see also Kennedy v. Town of Billerica, 617

9    F.3d 520, 532 (1st Cir. 2010); Wilson v. Town of Mendon, 294 F.3d 1, 6-7 (1st Cir.

10   2002).  We have rejected all alleged constitutional torts that could have formed a basis for

11   municipal liability.  Because Mercado-González does not allege any other constitutional

12   torts that could be attributed to the Municipality of Yauco, his complaint against Yauco is

13   **DISMISSED WITH PREJUDICE**.

14   **F.      Commonwealth Tort Claims**

15         We have discretion to decline supplemental jurisdiction over the remaining state

16   law claims since we have dismissed all of the claims over which we have original

17   jurisdiction.  See 28 U.S.C. § 1367(c)(3); see also United Mine Workers v. Gibbs, 383

18   U.S. 715, 726 (1966) ("if the federal law claims are dismissed before trial…the state

19   claims should be dismissed as well).  In exercising our discretion under § 1367(c), we

20   must consider the issues of "judicial economy, convenience, fairness, and comity."  Che

21   v. Massachusetts Bay Transp. Authority, 342 F.3d 31, 37 (1st Cir. 2003).   Having

22   considered these factors, we decline to exercise supplemental jurisdiction over Mercado-

23   González's  Commonwealth  law  claims.  Therefore,  we  **DISMISS   WITHOUT**

24   **PREJUDICE** Mercado-González's remaining Commonwealth law claims.

Civil No. 12-1718 (JAF)                                                                -9-

1                                        **IV.**
2
3                                   **<u>Conclusion</u>**

4          Defendants' motions to dismiss, (Docket Nos. 12, 21), are **GRANTED.** Mercado-

5    González's claims against Acosta, Nazario, their conjugal partnerships, and the

6    Municipality of Yauco in his complaint, (Docket No. 12), and his amended complaint,

7    (Docket No. 20), are **DISMISSED WITH PREJUDICE.** Mercado-González's

8    Commonwealth law claims are **DISMISSED WITHOUT PREJUDICE**.

9          **IT IS SO ORDERED.**

10         San Juan, Puerto Rico, this 25th day of June, 2013.

11                                                     <u>S/José Antonio Fusté</u>
12                                                     JOSE ANTONIO FUSTE
13                                                     U. S. DISTRICT JUDGE